surtax net income. No one denies that in computing the ordinary net income that the taxpayer is permitted to carry back or forward the net operating loss in another year, which net operating loss includes a deduction for the excess profits tax paid or accrued within the taxable year in which there was a loss. This is also true in the computation of the surtax net income.

Section 711(a) relates alone to the computation of the excess profits net income; it does not relate to the computation of the ordinary corporate net income nor to the surtax net income; hence, the prohibition therein contained against the deduction of excess profits taxes in a year in which a loss was sustained does not apply when a corporation is computing its ordinary net income or its surtax net income.

Therefore, inasmuch as this taxpayer's tax was computed under section 710(a) (1)(B) of the Revenue Act of 1942, and since the tax imposed by this section is not based on excess profits net income, the limitation imposed by subdivision (J)(i) of section 711(a)(1) and subdivision (L) (i) of section 711 (a)(2) is not applicable.

It results that the judgment heretofore entered in the sum of $148,841.72 will stand.

HOWELL and LITTLETON, Judges, concur.

JONES, Chief Judge, and MADDEN, Judge, adhere to the views expressed in there former dissenting opinion.

## McCLURE et al. v. UNITED STATES.
### No. 47268.

United States Court of Claims.

Decided March 3, 1953.

J. Roy Thompson, Jr., Washington, D. C. (Bernard J. Gallagher, Washington, D. C., on the briefs), for plaintiffs.

Edward L. Metzler, Washington, D. C., and Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This is a suit for adjustment in the price to be paid plaintiffs on a construction contract due to changes in ocean freight rates.

The contract called for construction of officers' quarters in the Panama Canal Zone. The contract price was $3,930,916.

The bid which was dated March 11, 1940, was opened March 12, 1940, and accepted on April 8, 1940, on which latter date a notice of award and a notice to proceed were issued by the defendant.

Upon receipt of these notices plaintiffs commenced performance of the work on April 15, 1940, pending execution of payment and performance bonds and the formal execution of the contract. The contract was signed as of April 16, 1940, the actual signing date being about August 1, 1940.

The plaintiffs entered into an agreement dated May 21, 1940, with a subcontractor for the latter to sell and deliver to plaintiffs the specified tile and fittings for the buildings.

The prime contract contained the following provision:

"It is understood and agreed that the Contractor's Bids are based in part upon the freight rates prevailing on the Panama Railroad at the time the award is made and that if such rates are changed at any time during the life of the Contract, thereafter each monthly or other periodic or final payment to the Contractor shall be increased or decreased in the amount of any consequent increased or decreased cost for freight due to increase or decrease in the freight rates actually paid by the Contractor for shipments on account of the Contract during the period to which said payment applies."

It is plaintiffs' contention that under the terms of the contract they are entitled to an adjustment equivalent to 7½ cents per hundredweight on that portion of the materials that was shipped while the rate was 60 cents per hundredweight, a total of $7,467.99.

The ocean freight rate on roofing tile on March 12, 1940, and until April 17, 1940, inclusive, was 60 cents per hundred pounds. On April 18, 1940, the rate was reduced to 52.5 cents per hundred pounds, but on August 12, 1940, was restored to 60 cents per hundred pounds where it remained through the remainder of the time here involved.

The single issue on this phase of the case turns on when the award was made.

It is plaintiffs' contention that the award did not become effective until August 1, 1940, when the contract was actually signed.[1] They cite this statement in the notice of award:

"This award shall become effective upon the execution of the formal contract, by you, and the furnishing, by you, of the performance and payment bonds required by the Act of August 24, 1935 * * *."

However, the award was dated April 8, 1940. At that time the rate was 60 cents. At the time plaintiffs received notice of award and began work on April 15, 1940, it was 60 cents, and that was the rate which prevailed at the time they had submitted their bid on March 11, 1940. Plaintiffs continued with the work after April 15, 1940.

We conclude that the basic rate of the contract was 60 cents. The parties treated the contract as being effective upon receipt of notice of award, leaving only the usual requirements of furnishing performance and payment bonds and the formality of the actual signing. Had the ocean freight rate been increased between April 15, 1940, and August 1, it certainly would not have been fair to plaintiffs to

---

1. A supplemental agreement was signed under date of August 1, 1941, but this does not materially affect plaintiff's claim since both at the time of the opening of the bids and at the time of the making of the award as we have interpreted the contract under the facts of this case, the rate was 60 cents per hundred pounds.

deny them the increase on the ground that the contract was not formally signed until August 1, 1940.

The plaintiffs therefore are not entitled to recover since at no time was the rate above 60 cents which was the rate that prevailed at the time of the bid, the receipt of the award and the actual beginning of the work.

The defendant has filed a counterclaim in the sum of $1,885.38.

An employee of the subcontractor who presented the claim on behalf of the plaintiffs and the Comptroller General's representative in acting on the claim were not aware of the fact that the ocean freight rate in effect at the time of the receipt of the award was 60 cents. The Comptroller General's representative, on the mistaken assumption that at the time of the opening of the bids and the receipt of the award and notice to proceed, the rate was 52.5 cents, caused a certificate of settlement, dated December 11, 1943, to be issued to plaintiffs, covering the difference in the ocean freight paid on shipments made after August 1, 1940, since the rate that had been temporarily reduced to 52.5 cents had been restored to 60 cents per hundred pounds on that date. The plaintiffs were paid this part of their claim.

The Comptroller General later issued a certificate of settlement correcting what it is claimed was an error in issuing the previous certificate, and certifying that plaintiffs were indebted to the United States in the sum of $1,885.38 which he claims was erroneously paid.

There is no allegation or proof as to mutual mistake and no plea for reformation of the contract. In fact, there is no proof that plaintiffs did not know, or have access to knowledge of what the ocean freight rates were at any particular time. There is no allegation of misrepresentation. The entire case is based on the claim that the rate had been reduced before the award became effective.

In view of our conclusion that the award was made in early April 1940, was received by plaintiffs not later than April 15, and that plaintiffs began performance of the contract on that date and continued performance from that date, thus treating the award as complete, and in the light of the undisputed fact that the ocean freight rate during all the negotiations, when the bids were opened and when the plaintiffs received notice of the award and began work was 60 cents per hundred pounds, it seems manifest that that was the basic rate contemplated by the parties. It follows that after the ocean freight rate was restored to 60 cents after August 1, 1940, it was still not above the basic rate prevailing at the time the award was actually made.

An error, therefore, was made in paying the plaintiffs the sum of $1,885.38, and defendant should recover that amount on its cross action. McElrath v. United States, 102 U.S. 426, 440, 26 L.Ed. 189.

It follows that plaintiffs are not entitled to recover and their petition is dismissed.

On its counterclaim defendant is entitled to recover from plaintiffs, jointly and severally, $1,885.38, and judgment will be entered in that amount.

It is so ordered.

HOWELL, MADDEN, WHITAKER and LITTLETON, JJ., concur.